## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Daniel E. Beresh, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since April 2003. I am presently assigned to the Office of the Special Agent in Charge, Baltimore, Maryland, where I am responsible for conducting criminal investigations involving the illegal exportation of goods and services from the United States. I have participated in the execution of search and arrest warrants in connection with the above mentioned investigations. Prior to my appointment with HSI, I was employed as a sworn peace officer in the State of Maryland for approximately seven years.

2. This affidavit is being submitted in support of an application for a search warrant for the electronic contents stored on an Apple iPhone 5, serial number C39K8ANRDTTP, with assigned phone number (240) 210-6966. The mobile phone is owned and operated by Kamran Ashfaq MALIK, who was arrested on March 26, 2014, on a federal warrant issued in the District of Maryland following his indictment on charges relating to the unlawful export of defense articles and goods. Records maintained by AT&T, the mobile phone provider, confirm that the phone number is subscribed to MALIK at 5720 Crain Highway, Upper Marlboro, Maryland.

3. As set forth herein, I respectfully submit that there is probable cause to believe that the contents of MALIK's cell phone contain evidence, fruits and instrumentalities of the offenses for which he has been indicted; namely: 1) the unlawful export of defense articles in violation of the Arms Export Control Act (AECA), 22 U.S.C. § 2778; 2) the unlawful export of goods, as those items are classified in the Export Administration Regulations (EAR), 15 C.F.R. Part 774, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1705; and 3) conspiracy

to defraud the United States, specifically the Departments of State and Commerce, by impeding and obstructing the enforcement of export laws and regulations in violation of 18 U.S.C. § 371.

4. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other federal law enforcement and intelligence officials relating to this investigation. The information set forth in this affidavit is based on my own observations and review of documents, or reliable information provided to me by other law enforcement personnel. I am setting forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested search warrant. However, I have not omitted any fact which might tend to defeat a finding of probable cause. Unless otherwise indicated, all written and oral statements referred to herein are set forth in substance and in part, rather than verbatim.

### I. Applicable Criminal Violations

5. Pursuant to the provisions of the AECA and its implementing regulations, the International Traffic in Arms Regulations (ITAR) (22 C.F.R. Parts 120-130), no defense articles or services designated on the United States Munitions List (USML) may be exported or temporarily imported without a license unless specifically provided by regulation. The ITAR states, in part, that any person who intends to export a defense article must first obtain approval from the State Department's Directorate of Defense Trade Controls (DDTC). As such, an application for a permanent export license, known as a Form DSP-5 (Application/License for Permanent Export of Unclassified Defense Articles and Related Unclassified Technical Data), must be obtained prior to commencement of the export.

6. Under the provisions of the Export Administration Act of 1979, which has remained

2

in full force and effect through a series of Executive Orders issued by the President pursuant to his authority under the IEEPA, and its implementing regulations, the Export Administration Regulations (EAR) (15 C.F.R. Parts 730-774), certain dual-use commodities may not be exported or reexported to proscribed countries without a license issue by the Commerce Department's Bureau of Industry and Security (BIS). The requirement of an export license is dependent upon an item's technical characteristics, destination, end-user and end-use, and failure to obtain such a license constitutes a violation of Section 764.2(a) of the EAR.

## II.  Probable Cause

7. On February 11, 2014, a federal grand jury in the District of Maryland indicted MALIK and his co-defendant Waleed AFTAB for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, unlawful export of defense articles in violation of 22 U.S.C. § 2778, and unlawful export of goods in violation of 50 U.S.C. § 1705. The indictment was the result of an HSI investigation that began with a seizure in Dubai on November 28, 2012, of a package sent to Pakistan by AFTAB under a false name and address. The package was found to contain an array of AR-15 style semi-automatic rifle components, including, among other items, two .223 caliber rifle lower receivers, two .223 caliber rifle bolt carriers, two .223 caliber 10 round magazines, an Aimpoint optical gun sight, a TLR-2 LED rail mounted flashlight with laser, a collapsible butt stock, and a fore grip magazine holder. AFTAB had falsely manifested the package to contain "plastic cup holders" and "door springs."

8. The owner of the shipping store in Bowie, Maryland, from which AFTAB had shipped the package, subsequently identified AFTAB as the shipper of the intercepted parcel. One of the lower receivers in the confiscated package was identified by its serial number as belonging to a

Colt M-4 semi-automatic rifle purchased by MALIK on July 29, 2012, from a federally licensed firearms dealer in Lorton, Virginia. The second lower receiver found in the confiscated package was identified by its serial number as belonging to a Rock River Arms LAR-15 semi-automatic rifle originally purchased from a Maryland firearms dealer in August 2007 and subsequently reported as stolen.

9. The DDTC has certified that both lower receivers, as well as a .223 caliber 10 round magazine and bolt carrier, are considered defense articles under Category I of the USML and controlled for export under the AECA. The BIS has certified that the Aimpoint optical gun sight and the TLR-2 LED rail mounted flashlight with laser both found in the confiscated package are identified on the Commerce Control List as controlled for export to Pakistan. Both the BIS and the DDTC have confirmed that the required export licenses were not obtained for shipments of the controlled articles contained in the confiscated package, nor is there any record of MALIK or AFTAB having applied for or obtained licenses to ship any controlled items.

10. On December 1, 2012, AFTAB was subject to an outbound secondary examination at JFK airport as he was departing for a flight to Pakistan. He was found to be in possession of a purchase receipt from an on-line firearm accessories store in Roaring Spring, Pennsylvania, dated September 24, 2012. When questioned about the transaction, AFTAB claimed that he was a member of a shooting range at the store and had previously purchased and stored a Beretta PX-4 handgun at that location. The business address of the vendor is a single family residence. It is a home-based business that does not sell firearms and does not have a shooting range as was represented by AFTAB. Subsequent investigation revealed that the receipt was actually for the purchase of six AR-15 100 round dual drum magazines, which are designed to feed .223 caliber ammunition to AR-15

4

style semi-automatic rifles. The purchaser was listed as Arif Amir at 6802 Ben Franklin Road, Springfield, Virginia. A review of subpoenaed bank records confirmed that the monies paid for the purchase were debited against a bank account in Arif Amir's name; however, the purchaser's phone number and email address (kamran5@verizon.net) were subscribed to MALIK.

11. On March 7, 2013, MALIK was selected for a secondary exam at JFK airport upon arrival from Pakistan. During his interview, he provided an email address of kamran5@verizon.net. MALIK's laptop computer and Apple iPhone 4, number (240) 210-6966, were subjected to a border search. Various photos of AR-15 style semi-automatic rifles and magazines were found on MALIK's phone that, according to the GPS info on the phone, were taken at locations at or near MALIK's residence on Lords Landing Road in Upper Marlboro, as well as at or near the location of MALIK's known residence in Lahore, Pakistan. A number of the photos showed rifles bearing an optical gun sight and rail mounted flashlight with laser similar to parts confiscated in the Dubai package. A text message was also found on MALIK's phone that referenced the FedEx tracking number of the shipment detained in Dubai. MALIK's laptop contained AFTAB's resume, which included the phone number from which the text message originated. It was subsequently determined that the phone number belonged to Sajid Mahmood, who works at the Jerry's Subs and Pizza in Upper Marlboro, Maryland, that was owned and operated by MALIK, and who is an illegal overstay in the United States against whom a warrant for removal/deportation is pending. MALIK's laptop also contained a "profile" that listed Arif Amir's name and address along with MALIK's email address and cell phone number (240) 210-6966.

12. According to records subpoenaed from various firearms dealers and suppliers of firearm accessories, MALIK purchased, or caused to be purchased, approximately forty-eight AR-15

100 round dual drum magazines between September and October 2012. Some of the purchases were made using Arif Amir's name, Virginia address and bank account, and others by MALIK using a commercial building address in Springfield, Virginia, that included a nonexistent suite number for that location, and billed to his own bank account. In each instance, MALIK's cell phone number (240) 210-6966 and email address were provided as part of the purchaser's information. Unlike Maryland, there are no capacity restrictions on magazines sold in Virginia.

13. A review of records obtained from the Bowie shipping outlet utilized by AFTAB to ship the parcel intercepted in Dubai indicated that between October and November 2012, MALIK and AFTAB shipped various packages manifested as "lids," "plastic holders," "empty bags," "thread holders," "metal chain," "plastic cup holders," "plastic rope holders," and "door springs." In each instance, fictitious identifying information was provided, to include fictitious return addresses on Lords Landing Road and fictitious names for the shipper. In each instance, the phone numbers provided for the shipper were either MALIK's cell phone number (240) 210-6966 or AFTAB's cell phone number. In some instances, the packages were shipped to an associate at an address in the same area as MALIK's Lahore residence. The weight of each of the shipped packages was inconsistent with the items manifested therein, and more consistent with the weight of the drum magazines purchased during the same period of time by MALIK. In addition to the text message found on MALIK's phone containing the tracking number for the confiscated packages, a second text message was found on the phone with the tracking number for one of the other shipments to Pakistan manifested as "plastic rope holders."

14. In July 2013, federal search warrants issued in this District were executed on MALIK's email accounts, including kamran5@verizon.net, and nash20@verizon.net. (The latter

account was utilized by MALIK in connection with an inquiry to a firearms accessories supplier regarding a possible purchase of dual drum magazines.) All identifiable login IP addresses in connection with emails to firearms stores resolved to locations either near Lords Landing Road or Lahore, Pakistan, consistent in time with periods when MALIK was either in the United States or in Pakistan. In addition to photos of AR-15 style rifles and magazines found on MALIK's iPhone with GPS coordinates, other photos were also found of children holding various rifles, as well as a photo of MALIK taking a picture of himself on his phone. Also located on both the iPhone and laptop was evidence of web-based searches regarding dealers in firearms and related accessories, contacts and email communications, and specifically on the iPhone, notes relating to firearm-related inquiries and purchases.

15. Recently, your affiant confirmed that on or about September 9, 2013, MALIK purchased another Colt AR-15 rifle, serial number LE277834, from the same Virginia firearms dealer from whom he had purchased the Colt rifle whose lower receiver was confiscated in Dubai. On or about February 21, 2014, MALIK purchased two AR-15 lower receivers, serial numbers SBR76579 and SBR76239, from the same supplier. In each instance, MALIK provided his cell phone number (240) 210-6966 in completing the purchases.

16. On or about March 6, 2014, your affiant received information that MALIK was seeking to export another package to Pakistan from the Bowie shipping outlet. Upon arrival at the outlet, agents identified a corrugated box weighing approximately twenty-one pounds. According to the accompanying shipping receipt, bearing tracking number 798127565720, the parcel was shipped by "Ashfaq Malik" and "Piping LLC" of 4100 Lords Landing Road, Upper Marlboro, Maryland, to Mujtaba Akram at 28 Ground Floor Akram Complex, Model Town Link Road, Lahore, Pakistan.

The U.S. Postal Inspection Service has since confirmed that 4100 Lords Landing Road is not a valid postal address. The shipping receipt further listed the sender's telephone number as (301) 856-0485, which, according to open source information, is listed to the Jerry's Subs and Pizza owned and operated by MALIK.

17. In connection with preparing the commercial invoice for the shipment, MALIK advised a representative of the shipping outlet that the package contained forty-seven special "screw holders and metal screws" and was part of a commercial sale valued at $70.50. The commercial invoice contains the following admonishment: "These commodities, technology or software, were exported from the United States in accordance with the Export Administration regulations. Diversion contrary to U.S. law prohibited." The form was signed by MALIK in the representative's presence, and MALIK paid $231.20 in cash to have the package shipped.

18. The resulting border examination of the package by HSI agents revealed twenty-eight .223 caliber bolt carriers, which are components meant to house the weapons bolt and firing pin of an AR-15 rifle. Each bolt carrier was individually wrapped in plastic wrap, with two bolt carriers then paired together and wrapped in duct tape. The package also contained twenty-four square head machine bolts used to fasten building materials. The machine bolts were inserted in the hollow cavities of several bolt carriers, with the machine bolt heads protruding from one end as if to confuse the firearm parts for industrial fasteners if examined by Customs officials by x-ray. HSI agents subsequently seized the firearm components as arms exported contrary to law and allowed an empty box to be shipped to the ultimate consignee in Pakistan.

19. The representative of the Bowie shipping outlet subsequently advised your affiant that on or about March 10, 2014, an individual identifying himself as MALIK phoned the shipping outlet.

MALIK claimed that the intended recipient of the package notified him that the box shipped was empty and was not the same box that MALIK originally sent. MALIK questioned the representative about the whereabouts of his original box and its contents. MALIK verbally provided his cell phone number (240) 210-6966 as a good contact phone number.

20. On or about March 20, 2014, the representative reported that he received another call from an individual identifying himself as MALIK. MALIK, whom the representative described as being upset, accused the representative of losing the package. MALIK allegedly told the representative that the latter would "pay" for the lost package. The representative told your affiant that he took MALIK's comments as a physical threat to his well-being and feared MALIK would cause him bodily harm.

21. As noted above, MALIK was arrested on March 26, 2014, in connection with his federal indictment in the District of Maryland. A search incident to MALIK's arrest revealed he was in possession of the referenced Apple iPhone 5 with assigned number (240) 210-6966. HSI agents detained the mobile device in an effort to preserve any evidence of the alleged violations. On April 1, 2014, a forensic image of the data stored on the phone was completed. A search of the data has not been done. The instant warrant request is being made in order to obtain authorization to conduct a full search of the data stored on MALIK's phone.

### III.   Conclusion

22. Your affiant knows from his experience, background and training that it is very common for criminal actors to maintain records, electronic or otherwise, of their unlawful activities and contacts with co-conspirators or others facilitators. In the context of export violations, as evident in this case, these records can include text and voice messages, contact lists, notes, electronic mail

communications, photos of items shipped or purchased for shipment, web-based searches, and copies of shipping, purchase and financial records. Based on the information set forth herein, including reference to MALIK's repeated use of his cell phone to complete and document his unlawful firearms-related exports, it is your affiant's belief that probable cause exists to believe that within the referenced mobile phone bearing number (240) 210-6966 are fruits, instrumentalities and evidence of export violations under 22 U.S.C. 2778 and 50 U.S.C. § 1705, and conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

Your affiant has signed this document under oath as to all assertions and allegations contained herein and states that its contents are true and correct to the best of his knowledge.

_____
Daniel E. Beresh, Special Agent

Sworn and subscribed to before me this ___9th___ day of April, 2014.

_____
Stephanie A. Gallagher
United States Magistrate Judge

## ATTACHMENT A

I. **Information to be Seized by Law Enforcement Personnel**

All stored electronic communications, including electronic mail, text messages, files, photographs, and documents, contained on the subject Apple iPhone which are evidence, fruits, and instrumentalities of the unlawful export and attempted export of defense articles and services in violation of 22 U.S.C. § 2278, the unlawful export of goods in violation 50 U.S.C. § 1705, and conspiracy to defraud the United States in violation of 18 U.S.C. § 371, to include evidence that:

  a.  identifies individuals or correspondents engaged in the unauthorized export and/or unlawful smuggling of defense articles, services, and goods/commodities from the United States;

  b.  evidences or identifies the means and methods by which the unauthorized export and/or unlawful smuggling of defense articles and services, and/or goods/commodities, from the United States has occurred or may occur in the future;

  c.  evidences or identifies the means of payment or financing of the unauthorized sale and/or export and/or unlawful smuggling of defense articles and services, and/or goods/commodities, from the United States;

  d.  evidences or identifies the means of shipping and/or smuggling out of the United States of any defense articles and services, and/or goods/commodities;

  e.  evidences or identifies the structure of any organization(s) that are involved in the unauthorized export and/or smuggling of defense articles and services, and/or goods/commodities, from the United States;

**II. Description of Methods to be Used for Searching Electronically Stored Information**

This warrant authorizes the search of electronically stored information. The search shall be conducted pursuant to the following protocol in order to minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search are viewed.

With respect to the search of any digitally/electronically stored information seized pursuant to the instant warrant as described above, the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

  a.  examination of all the data contained in the subject cell phone determine whether that data falls within the items to be seized;

b.  searching for and attempting to recover any deleted, hidden or encrypted data to determine whether that data falls within the list of items to be seized;

c.  physical examination of the storage device, including surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized;

d.  opening or reading portions of files in order to determine whether their contents fall within the items to be seized;

e.  scanning storage areas to discover data falling within the list of items to be seized, to possibly recover any such deleted data, and to search for and recover files falling within the list of items to be seized; and/or

f.  performing key word searches through all electronic storage areas to determine whether occurrence of language contained in such storage areas exist that are likely to appear in the evidence to be seized.